UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY DURHAM,<br><br>        Plaintiff,<br><br>    v.<br><br>FCA US LLC,<br><br>        Defendant. | Case No.: 2:17-cv-00596 - JLT<br><br>ORDER ON MOTIONS IN LIMINE<br>(Docs. 61-71) |

Timothy Durham purchased a 2012 Dodge Ram 1500 on August 14, 2012, which he contends had serious defects and nonconformities to warranty. Durham contends his vehicle had transmission, electrical, suspension, and engine defects. Durham contends FCA UC LLC, a manufacturer of Dodge vehicles, is liable for violations of the Song-Beverly Consumer Warranty Act and fraudulent inducement under California law. The defendant denies these claims.

## I.    Legal Standards Governing Motions in Limine

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir. 2003) (citations omitted).

Importantly, motions in limine seeking the exclusion of broad categories of evidence are disfavored. See Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975). The Court "is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine. Sperberg, 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," C & E Services, Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. Jonasson, 115 F. 3d at 440.

For example, under the Federal Rules of Evidence, any evidence that is not relevant is not admissible. Fed. R. Evid. 402. To determine that evidence is relevant, the Court must find "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Nevertheless, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The rulings on the motions in limine made below do not preclude either party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrate a change of circumstances that would make the evidence admissible, such as for impeachment or if the opponent opens the door to allow for its admissibility. However, if this occurs, the proponent of the evidence **SHALL** raise the issue with the Court outside the presence of the jury. Finally, the rulings made here are binding on all parties and their witnesses and not merely on the moving party.

///

## II. Plaintiffs' Motions in Limine

### A. Plaintiff's motion in limine No. 1 (Doc. 61)

Plaintiffs seek to exclude evidence "that Plaintiff did not make sufficient efforts to ask defendant to repurchase or replace the subject vehicle." (Doc. 61) Mr. Durham argues that evidence that he did not make sufficient efforts to ask FCA to repurchase or replace the subject vehicle is irrelevant because California law has no such requirement. Consequently, the plaintiff asserts that any argument or evidence suggesting he failed to act reasonably in this regard is irrelevant or misleading.

Nevertheless, the plaintiff argues that FCA's refusal to repurchase or replace the defective vehicle is relevant to his prayer for civil penalties. Song-Beverly provides for civil penalties where a plaintiff establishes that a defendant's failure to comply with an obligation of that statute was willful. Cal. Civ. Code § 1794(c). A jury can find that a violation was willful where a manufacturer "refused a refund or replacement on the ground a reasonable number of repair attempts had not been made, without making any effort to gather the available information on repair history. . ." Kwan v. Mercedes-Benz of N. Am., Inc., 23 Cal.App.4th 174, 185 (1994). The plaintiff intends to testify that he sought repurchase. Then he will argue that FCA failed to act until after he sued and that failure equates to willful conduct that is subject to civil penalties.

The plaintiff also seeks to preclude FCA from examining Plaintiff about why he "did not do more to obtain a buy-back prior to filing a lawsuit" because Song-Beverly places the burden on the manufacturer to monitor warranty repair attempts and "does not require consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties-other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle," even though, "as a practical matter," most consumers likely will make such a request. Krotin v. Porsche Cars N. Am., Inc., 38 Cal.App.4th 294, 302-303 (1995), as modified on denial of reh'g (Sept. 14, 1995); see also id. at 303 ("As it stands now, however, the manufacturer has an affirmative duty to replace a vehicle or make restitution to the buyer if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts, and the buyer need not reject or revoke acceptance of the vehicle at any time. The buyer need only provide the manufacturer with a reasonable opportunity to fix the vehicle."); Lukather v. Gen. Motors, LLC, 181

Cal. App. 4th 1041, 1050 (2010) (citing <u>Krotin</u> and rejecting the defendant's contention that plaintiff "himself had a duty to act promptly under the Act").

The plaintiff also seeks to prevent FCA "from trying to portray Plaintiff as [a] litigious or greedy person" or "from claiming that Plaintiff did not exhaust all of his options prior to filing a lawsuit" because any such claim is irrelevant because the burden rests with FCA to offer to repurchase or replace the vehicle. Doc. 61 at 6. He also argues that this evidence or argument should be excluded as unduly prejudicial under Federal Rule of Evidence 403 because it risks tainting him in the eyes of the jury without providing any probative information about the claims in this case.

FCA opposes, arguing that the plaintiff intends to testify that he sought repurchase. Given this, he should not be allowed to preclude them from inquiry on the topic. The Court agrees that though the plaintiff is not required to affirmatively request repurchase, if he chooses to testify that he requested repurchase, the defense is entitled to question him about what he did. Thus, the motion is **DENIED**.

### B. Plaintiff's motion in limine No. 2 (Doc. 61)

The plaintiff seeks to exclude testimony from Michael McDowell, who is FCA's "person most knowledgeable." (Doc. 62) The plaintiff asserts correctly that only designated experts are permitted to offer opinions.

As a preliminary matter, FCA reports that the plaintiff did not take Mr. McDowell's deposition, so he can have no idea what Mr. McDowell will say. (Doc. 80) FCA notes also that Mr. McDowell is a long-time employee who, due to this experience working for FCA, has personal knowledge about various topics including the Customer Assistance Inquiry Records. FCA clarifies that it has no intention of seeking testimony that is beyond Mr. McDowell's personal knowledge and which strays into expert testimony.

On the other hand, the plaintiff intends to ask questions of Mr. McDowell as to whether FCA's conduct conformed to FCA's policies and other such questions that requires Mr. McDowell to offer lay opinions. If this occurs, FCA is entitled to question Mr. McDowell similarly. Neither party is entitled to as Mr. McDowell any questions that would urge him to stray into expert territory and he is not permitted to offer an expert opinion. Consequently, the motion is **DENIED**.

///

4

**C.     Plaintiff's motion in limine No. 3 (Doc. 63)**

The plaintiff seeks to exclude evidence regarding his attorneys' advertising. (Doc. 63) Mr. Durham argues that this information is irrelevant and is prejudicial. Id.

FCA asserts that the attorneys' advertisements may be used necessary during voir dire to select a fair and impartial jury. (Doc. 81) The Court agrees that the defendant is entitled to determine whether prospective jury members have received advertisements may be important to its effort to select the jury. However, it does not find that attributing any such advertisements to plaintiff's counsel is necessary to accomplish the stated goal. Thus, the motion is **DENIED** to the extent that the defense may refer to the advertisements but may not attribute the advertisements to the plaintiff's attorneys. It is **RESERVED** to the extent that these advertisements may not be used during the presentation of substantive evidence unless the issue is first raised to the Court outside the presence of the jury and a showing is made as to its relevance.

**D.     Plaintiff's motion in limine No. 4 (Doc. 64)**

The plaintiff seeks to exclude Exhibits 306 through 311 because they were not produced during discovery. (Doc. 64) The plaintiff does not describe these exhibits, provide any statement that he did not learn of these documents during discovery or that he would be otherwise surprised by them. Likewise, he does not provide any evidence that he propounded discovery that would have required production of the exhibits, though the motion claims this.

The Court notes that the exhibits at issue are:

306. CAN C Bus Topology – 2012 Dodge Ram 1500
307. CAN IHS Network Topology – 2012 Dodge Ram 1500
308. Photograph of 2007 Wrangler TIPM7
309. Photograph of 2007 Dodge Nitro TIPM7
310. Photograph of 2012 Dodge Ram
311. Part Number List of TIPM7s 2007-2013

The defense argues that these exhibits are intended to be used only as rebuttal evidence to address the plaintiff's claim that the TIPM at issue in this case is the same TIPM as in many other vehicles. (Doc. 82) The defense asserts that these exhibits are intended to demonstrate the fallacy of this position.

A party is prohibited from using at trial information not disclosed during the discovery period unless the failure to supplement was substantially justified or harmless. Fed.R.Civ.P. 37(c)(1); R & R

Sails, Inc. v. Ins. Co. of the State of Pennsylvania, 673 F.3d 1240, 1246 (9th Cir.2012) (the party facing the preclusion of evidence under Rule 37 "bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless"). Rule 37(c) "gives teeth" to the requirements of Rule 26(e) "by forbidding the use on a motion or at trial of any information required to be disclosed by" that rule, unless the party's failure to disclose the required information is substantially justified or harmless. See Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir.2001).

To determine whether to preclude the introduction of evidence under Rule 37, the Court considers: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence." San Francisco Baykeeper v. West Bay Sanitary Dist., 791 F.Supp.2d 719, 733 (N.D. Cal. 2011) (quoting Dey. L.P. v. Ivax Pharms., Inc., 233 F.R.D. 567, 571 (C.D. Cal. 2005)).

Because the plaintiff has failed to support his motion with evidence addressing the applicable Rule 37 factors[1], it is **DENIED**.

### E.     Plaintiff's motion in limine No. 5 (Doc. 64)

The plaintiff seeks to exclude "settlement discussions between the parties, by and through counsel." (Doc. 65) However, it is unclear the content of the discussions at issue. The defense notes this ambiguity and argues that, at most, "post-litigation settlement discussions" should be considered only.

Under Federal Rule of Evidence 408, compromise or negotiation evidence "is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. Federal Rule of Evidence 408 contains an exception permitting admission of evidence of compromise offers or negotiation "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid.

---

[1] Because counsel have litigated similar cases many times in the past based upon a core volume of unchanging evidence, evidence related to surprise the plaintiff has suffered is particularly important.

408.

Because the plaintiff has failed to detail the evidence at issue, neither the defense nor the Court can determine whether there is "another" purpose for the evidence beyond attempting to provide the validity of the claim or its value. Consequently, the motion is **DENIED**.

### III. Defendant's Motions in Limine

#### A. Defendant's motion in limine No. 1 (Doc. 67)

The defendant seeks to exclude the testimony or Dr. Barbara Luna. (Doc. 67) The plaintiff reports that Dr. Luna will testify,

> as to matters including, but not limited to, corporate business culture, corporate customs and practices, and corporate standards of concealing or omitting material information. Ultimately, Dr. Luna's testimony will likely center around issues pertaining to whether Chrysler's business practices were deceptive and being performed in compliance with Chrysler's various disclosure obligations and its own code of conduct.

(Doc. 74 at 7) She'll testify about,

> whether or not the internal documents obtained from Chrysler show that its corporate officials had knowledge of the TIPM defects, and whether such knowledge and the nondisclosure of such defects complied with Chrysler's disclosure obligations under applicable regulations and its own code of conduct, and presented evidence of questionable corporate practices.

Id. at 3-4. She will testify also that,

> based on her review of thousands of pages of Chrysler's corporate records, the management and director at Chrysler had actual notice of information that relates to reported problems that were attributed by Chrysler's own personnel to the TIPM-7, and that Chrysler concealed those facts from Plaintiff and other customers alike."

Id. at 4. The plaintiff argues,

> Dr. Luna has specialized knowledge in this area to explain how specific communications and corporate decisions reveal Chrysler's knowledge, its failure to abide by its disclosure obligations and its own code of conduct, in order that the jury may reach a conclusion about Chrysler's intent to defraud consumers.[2]

Id. at 8.

---

[2] The Court is not certain how Dr. Luna's expertise allows her to offer these opinions because the plaintiff failed to address this point. Her background, from what the Court has learned by reviewing other cases in which she has been involved and which are accessible on WestLaw, implies her fraud investigation expertise relates to accountancy, rather than fraudulent concealment of facts to the consumer.

7

Under Federal Rule of Evidence Rule 702, an expert witness may testify as to his opinions if: "(a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Id. The Court is obligated to serve in a "gatekeeping" function. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). The trial court must make an initial assessment of the proposed expert testimony to ensure that it "rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. In other words, the trial court must consider (1) whether the reasoning or methodology underlying the expert testimony is valid (the reliability prong); and (2) whether the reasoning or methodology can be applied to the facts in issue (the relevancy prong). See id. at 592-93.

To determine the reliability of expert testimony, the Supreme Court has identified four factors that a trial court may consider: "(1) whether the 'scientific knowledge . . . can be (and has been) tested'; (2) whether 'the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) 'general acceptance.'" Obrey v. Johnson, 400 F.3d 691, 696 (9th Cir. 2005) (quoting Daubert, 509 U.S. at 593-94). These factors, however, are not exclusive. See Kumho Tire, 526 U.S. at 150 ("Daubert makes clear that the factors it mentions do not constitute a definitive checklist or test." (emphasis in the original) (citation and internal quotation marks omitted)). Rather, the trial court enjoys "broad latitude" in deciding how to determine the reliability of proposed expert testimony. Id. at 141-42. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1318 (9th Cir. 1995) ("Daubert II"). Second, the proposed expert testimony must be "relevant to the task at hand," meaning that it "logically advances a material aspect of the proposing party's case." Daubert, 509 U.S. at 597. The Supreme Court has explained that expert testimony is relevant if it assists the trier of fact in understanding evidence or determining a fact in issue in the case. Daubert, 509 U.S. at 591.

Dr. Luna is a forensic accountant and damages and valuation expert. She authored an expert report in this case (which has not been provided). Plaintiff argues that Dr. Luna has a reliable basis in

the knowledge and experience of the relevant discipline because she has "thirteen certifications and accreditations regarding his analysis of business dealings, including [a] license as a Certified Fraud Examiner" and has "over 30 years of experience as a forensic accountant as well as experience analyzing damages and valuation of corporate business dealings." (Doc. 74 at 7) The plaintiff argues that Dr. Luna's testimony falls outside the ordinary knowledge of the jury and that her expertise concerning business practices and whether Chrysler acted in compliance with its "various disclosure obligations and its own code of conduct" will be helpful to the jury. Id.

The Court agrees that Dr. Luna's lack of firsthand automotive engineering knowledge does not render all of her testimony inadmissible. "[E]xpert opinions may find a basis in part 'on what a different expert believes on the basis of expert knowledge not possessed by the first expert,'" and this is in fact "common in technical fields." In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig., 978 F.Supp.2d 1053, 1066 (C.D. Cal. 2013) (quoting Dura Auto. Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609, 613 (7th Cir. 2002)). An expert may not merely act as a conduit for another expert's testimony or simply vouch for another expert but may rely on another expert's opinion in formulating her own opinion does not on its own run afoul of Rule 702. Nor does the fact that Dr. Luna was provided internal FCA documents from counsel or that she read about certain allegations in the Complaint render her testimony unreliable. Rule 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703; see, e.g., In re Bard IVC Filters Prod. Liab. Litig., No. MDL 15-02641-PHX DGC, 2017 WL 6554163, at *2 (D. Ariz. Dec. 22, 2017) ("Those documents are factual evidence in this case, and experts clearly are permitted to take factual evidence into account."). Notably, however, the complaint merely should inform Dr. Luna of what the plaintiff alleges, but she cannot be a conduit to parade counsel's unverified assertions before the jury

Of greatest concern to the Court is the lack of information Dr. Luna possesses related to the TIPM at issue. She did not review the report of plaintiff's automotive expert and repeatedly referred counsel to Mr. Lepper for questions as to the TIPM. As noted above, she intends to testify as to the problems with the "TIPM" and with the TIPM-7, but she fully admits she has no expertise to opine as to which version of the TIPM is at issue in this case. Given this, there is no showing how her

testimony is relevant if she, herself, can't say that emails from 2007 relate to the TIPM at issue in Mr. Durham's 2012 Dodge Ram 1500 or to some other version of this module.

If it is her intent to summarize emails and other Chrysler documents she read and provide the jury with a roadmap of who said what to whom, this information is only pertinent to the extent the emails and documents relate to the version of the TIPM-7 installed in Mr. Durham's truck. Though the plaintiff is correct that Dr. Luna's opinions may be based upon information that is not within her personal knowledge; even still, it must be based upon *knowledge*. For example though Dr. Luna will testify that FCA knew since 2007 that the TIPM system was defective, she admitted to having no knowledge or expertise to determine whether the TIPM system at issue was the same TIPM system that existed in 2007 or whether it is the TIPM discussed in the emails. At her deposition, she admitted to not having spoken to the automotive expert on this topic or reviewing his report but, instead, relying upon past discussions with others in the field—unrelated to this case—and attending a seminar. (Doc. 67 at 36) In doing so, however, it is undisputed that Dr. Luna lacks the expertise to form any conclusions about the mechanics at issue. Id. at 37; See e.g., Base v. FCA US LLC, 2019 WL 1117532, at *8 (N.D. Cal. Mar. 11, 2019) [Dr. Luna not permitted to offer testimony that is not supported by adequate mechanical opinions by the expert.]

In short, it appears many of Dr. Luna's assumptions, which constitute the bases for the conclusions she had formed by the time she wrote her report and sat for her deposition, are based on no evidence at all. Because her opinions related to the defectiveness of the TIPM system at issue or when the defendant first learned of the defective nature of the TIPM system at issue, are only as good as the evidence upon which they are based, it does not appear that her opinions in this regard would assist the trier of fact.[3] An expert's obligation is not to form her opinions first and then later be apprised of evidence that may support them; she must first be apprised of the evidence and *then* form her opinions. She must include all of her opinions and the bases for them in her Rule 26 report and must be prepared to be fully examined on the topics upon which she has opined, including the

---

[3] Though the plaintiff takes issue with the defense's failure to provide Dr. Luna's report, the expert designation and her CV (Doc. 74 at 6), he ignores that the proponent of the expert testimony bears the burden of proving its admissibility. Fed. R. Evid. 702 advisory committee's note to 2000 amendment; Lust v. Merrell Dow Pharms., Inc., 89 F.3d 594, 598 (9th Cir. 1996).

10

underpinnings for her opinions. That did not occur here.

All things being equal, the Court's order would have allowed Dr. Luna to testify as to documents she reviewed related to the version of the TIPM-7 installed in the plaintiff's vehicle. However, she made clear at her deposition she is unable to distinguish the relevant documents. Thus, Dr. Luna may offer no opinion about whether the TIPM-7 system installed in the plaintiff's vehicle was defective, when or whether the defendant knew of any defect in the TIPM-7 system installed in the plaintiff's vehicle, whether documents demonstrate the TIPM-7 system installed in the plaintiff's vehicle was defective or whether the defendant acted in such a way as to mislead the plaintiff or others or whether the defendant fraudulently concealed any purported defect in the TIPM-7 system installed in the plaintiff's vehicle.

Likewise, the Court disagrees that Chrysler's "code of conduct" has any bearing on any liability or damage questions in this case, including the defendant's intent, and, it appears, using it is intended only to inflame the jury. It is, therefore, excluded under Rule 403.

Finally, the Court cannot presently determine whether there exists any foundation that would allow Dr. Luna to testify about "applicable regulations" (generally, experts are not entitled to opine as to the obligations imposed by law). Either party is free to address whether Dr. Luna's testimony should be precluded entirely according to the Daubert standards or other legal authority at the time of trial, outside the presence of the jury. Accordingly, the motion is **GRANTED in PART**.

**B.      Defendant's motions in limine No. 2 (Doc. 68); No. 3 (Doc. 81) and No. 4 (Doc. 77)**

In its motion in limine No. 2, the defendant seeks to exclude exhibits 102, 103, 105, 106, 108-143, 150 and 151. The defendant argues that these documents are National Highway Transportation Safety Administration documents or Technical Service Bulletins for a vehicle other than the 2012 Dodge Ram. The defendant argues the recalls discussed in the NHTSA documents "will not identify any of the alleged defects" of the plaintiff's 2012 Dodge Ram. (Doc. 68 at 3) The defense argues further that the Technical Service Bulletins—which are advisory documents sent to Chrysler dealerships to alert them to potential mechanical issues—did not apply to the 2012 Dodge Ram 1500 and there is no evidence the plaintiff's vehicle suffered from any of these complaints. Id.

The defendant also seeks to exclude exhibits 144-149, 169-177, 179, 181, 183-191, 193-205,

208-213, 215-228, 230-268 in its motion in limine No. 3. These documents are emails that reference the TIPM-7, though they do not refer either to the 2012 Dodge Ram 1500 or problems noted in the 2012 Dodge Ram 1500. The defense also argues that the plaintiff and, presumably, his witnesses lack personal knowledge of the contents of the documents.

Likewise, the defendant's motion in limine No. 4 seeks to exclude exhibits 178, 180, 182, 192, 206-207, 214 and 229. These exhibits were prepared by nonparties, Continental, NEC/TOKIN and TYCO Electronics.[4] The defense contends the documents do not relate to the 2012 Dodge Ram and "are not relevant to any mechanical issue in Plaintiff's vehicle," and do not demonstrate any prior knowledge by Chrysler of a defect in the TIPM-7. Thus, the defendant contends these documents are irrelevant.

The plaintiff argues that the TIPM-7—which was installed on many makes and models of Chrysler vehicles—suffered from various defects as evidenced by the exhibits at issue. The plaintiff's expert will opine that these documents placed FCA on notice that the TIPM-7 should have been scrapped and reengineered, rather than making corrections that constitute "band-aids" covering the systemic problem of the TIPM-7. (Doc. 75 at 2-3) The plaintiff will argue that the TIPM-7's defects manifested in various ways, even though only a few of these manifestations were shown in the plaintiff's truck. Id. The expert will opine that because the defendant knew of the problems with the TIPM-7 when it sold the truck to the plaintiff—no matter in which type of vehicle the problems existed or, even, what the problems were—this demonstrates fraudulent concealment of the defect in the TIPM-7 installed in the plaintiff's truck. Id.

It appears that plaintiff contends that problems with the TIPM-7 can manifest themselves in so many different ways as to permit introduction of documents related to any purported manifestation regardless of whether plaintiff's specific vehicle or the 2012 Dodge Ram 1500 pickups as a whole, experienced these problems. The Court disagrees. Though the plaintiff has not shown the documents to be relevant, even if they are relevant, they have the significant potential of prejudice to the defense because they would suggest to the jury that the myriad of problems demonstrated by other types of

---

[4] There appears also to be a dispute also as to whether the agreement entered into in other cases to allow the documents produced in the Velasco class action to be used at trial without an authenticating witness, applies to this case.

vehicles with a TIPM—even if the TIPM at issue was not the same version as in the plaintiff's vehicle—must mean that the problems with plaintiff's cars must have been caused by the TIPM-7. There is no showing that this "me too" evidence should be allowed here. Evidence concerning problems not experienced by or not directly related to plaintiff's type of vehicle is irrelevant, confusing and unduly prejudicial under Rules 401 and 403 and are excluded. Consequently, the motions are **GRANTED in PART.**

### C. Defendant's motions in limine No. 5 (Doc. 78)

The defense seeks to exclude exhibits 26, 27 and 28. The defense explains that these pages are repair records from the plaintiff taking the vehicle to a non-authorized FCA repair facility. At the hearing, the plaintiff agreed to withdraw these exhibits. Thus, the motion is **GRANTED.**

IT IS SO ORDERED.

Dated: __June 11, 2019__                    __/s/ Jennifer L. Thurston__
                                            UNITED STATES MAGISTRATE JUDGE