**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIMOTHY A. DURHAM, | ) Case No.: 2:17-cv-00596-JLT |
| Plaintiff, | ) |
| | ) ORDER GRANTING IN PART PLAINTIFF'S |
| v. | ) MOTIONS FOR ATTORNEY FEES AND COSTS |
| | ) |
| FCA US LLC, | ) (Docs. 108, 109) |
| | ) |
| Defendant. | ) |
| | ) |

Timothy Durham asserts that FCA US LLC is liable for violations of the Song-Beverly act and committed fraudulent inducement under California law. The parties settled the underlying claims, and Plaintiff now seeks an award of attorney fees and costs. (Docs. 108, 109.) For the reasons set forth below, Plaintiff's motion is **GRANTED** in part, in the modified amount of $32,068.96.

**I.    Background**

Plaintiff purchased a new 2012 Dodge Ram on August 14, 2012 for a cash price of $26,275.00 – adding taxes, fees and financing charges on a six-year loan, the total purchase price was $46,097.92. (Doc. 108-1 at 8.) The vehicle was distributed by FCA US LLC, which provided an express written warranty. (*Id*.)

According to Plaintiff, after approximately seventeen months and just over 15,500 miles of ownership, and within the applicable warranty periods, the vehicle began experiencing electrical problems. (*Id*.) Plaintiff states he delivered the vehicle to an FCA-authorized repair facility because

the airbag malfunction warning light was illuminated. (*Id.*) Plaintiff asserts that the vehicle remained at the repair facility for five days while the repair facility technicians attempted to correct the issue by reinstalling the wires and rerouting the harness. (*Id.*) Plaintiff reports that the electrical problems continued, later compounded by problems with the engine. (*Id.*) According to Plaintiff, approximately seventeen months later, Plaintiff again delivered the vehicle to an FCA-authorized repair facility because the electronic throttle control warning light illuminated several times, and the vehicle lost power. (*Id.*) Plaintiff reports that, in an attempt to correct the issues, the repair facility technicians special ordered parts to replace the defective accelerator pedal assembly and brake pedal switch. (*Id.*) They also reprogrammed the powertrain control module software. (*Id.*) Plaintiff states that he then returned the vehicle to the FCA-authorized repair facility approximately one week later, at which time the repair facility technicians replaced the defective accelerator pedal assembly and brake pedal switch per the previous repair visit. (Doc. 108-1 at 8-9.) Plaintiff reports that he repeatedly took the vehicle in for repairs, a total of three times in a period of just over seventeen months, but the serious electrical problems persisted. (Doc. 108-1 at 9.)

According to Plaintiff, despite the ongoing repairs and continued manifestation of problems, FCA refused to acknowledge the defective nature of Plaintiff's vehicle. (*Id.*) Plaintiff contends that, at all times, FCA had direct, contemporaneous knowledge of the vehicle's issues, which it records in various databases accessible to its authorized repair facilities and the corporate offices. (*Id.*) Plaintiff reports that these repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the FCA repair facility found a problem attributable to FCA, and billed FCA for the work. (*Id.*)

Plaintiff reports that he contacted Dodge customer service directly on August 28, 2015 and requested that FCA repurchase the defective vehicle. (*Id.*) Plaintiff alleges that despite FCA's affirmative duty under the law to perform an investigation and offer relief, FCA rejected Plaintiff's request that same day. (*Id.*)

Plaintiff filed a complaint in this action on November 7, 2016 in the Sacramento County Superior Court. (Doc. 108-1 at 10.) Plaintiff's complaint alleged willful violations of the Song-Beverly Act and fraudulent inducement – concealment for concealing a known TIPM defect, and

sought, among other things, civil penalties and punitive damages. (*Id*.) FCA filed their answer to Plaintiff's complaint, denying all liability and asserting numerous affirmative defenses, on or about December 23, 2016. (*Id*.)

On March 30, 2017, FCA filed its notice of removal of action from state to federal court. (Doc. 1.) On June 5, 2017, Plaintiff sought to remand the case to the Superior Court of California where litigation had already begun. (Doc. 11.) After a hearing on the matter, the Court ultimately denied Plaintiff's motion for remand. (Doc. 17.)

On March 20, 2018, the Court held a settlement conference, and the case was not settled. (Doc. 33.) The Court held a telephonic status conference regarding trial setting on December 11, 2018. (Doc. 47.) On April 22, 2019, the Court held the pretrial conference. (Docs. 54, 55.) Motions in limine were filed on May 13, 2019 (Docs. 61, 62, 63, 64, 65, 67, 68, 69, 70, 71), which were addressed by the Court on June 10, 2019 (Docs. 86, 88). The jury trial was set for October 28, 2019. (Doc. 102.) Thereafter, the parties filed a notice of settlement on October 17, 2019. (Doc. 104.)

Plaintiff filed a bill of costs on December 13, 2019. (Doc. 107.) On the same date, Plaintiff filed separate motions for attorney's fees for Knight Law Group LLP and Hackler, Daghighian, Martino & Novak, P.C. (Docs. 108, 109.) Defendant's opposition addressed both motions because they largely overlapped. (Doc. 110.) Plaintiff filed his brief in reply on January 6, 2020. (Doc. 113.)

## II.     Legal Standard

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law.  *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold v. Cal. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity action, the Ninth Circuit "applied state law in determining not only the right to fees, but also in the method of calculating the fees").

As explained by the Supreme Court, "[u]nder the American Rule, 'the prevailing litigant ordinarily is not entitled to collect a reasonable attorneys' fee from the loser.'" *Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric Co*., 549 U.S. 443, 448 (2007) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)).  However, a statute allocating fees to a

prevailing party can overcome this general rule. *Id.* (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967)). Under California's Song-Beverly Act, a prevailing buyer is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d).

The Song-Beverly Act "requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor America*, 31 Cal.App.4th 99, 104 (1994). The court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Id.* If the court finds the time expended or fee request "is not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount." *Id.* "A prevailing buyer has the burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'" *Id.* (quoting *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (1992)); *see also Goglin v. BMW of North America, LLC,* 4 Cal. App. 5th 462, 470 (2016) (same).

If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc.*, 163 Cal. App. 4th at 550, 564 (2008). Rather, the opposing party has the burden to demonstrate the hours spent are duplicative or excessive. *Id.* at 562, 564; *see also Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("[t]he party opposing the fee award can be expected to identify the particular charges it considers objectionable").

### III.     Evidentiary Objections

Both parties object to evidence presented in support of and in opposition to the motion for fees and costs. (Doc. 110-1; Doc. 113-2.) The Court has read and considered each objection made by Defendant and Plaintiff, and to the extent the Court considers any evidence to which there was an objection in its analysis, the objection is overruled.

4

# IV.    Discussion and Analysis

As a prevailing buyer, Plaintiff is entitled to an award of fees and costs under the Song-Beverly Act. *See* Cal. Civ. Code § 1794(d); *see also Goglin,* 4 Cal.App.5th at 470. Knight Law Group seeks: (1) an award of attorneys' fees pursuant to the Song-Beverly Act in the amount of $38,995.00; (2) a lodestar multiplier of 0.5, in the amount of $19,497.50; and (3) actual costs and expenses of $20,248.96. (Doc. 108-1 at 7-8.) Thus, Knight Law Group seeks a total award of $78,741.46. (Doc. 108-1 at 8.) Hackler Daghighian Martino & Novak, P.C. seeks: (1) for an award of attorney's fees pursuant to Civil Code section 1794(d) under the "lodestar" method in the amount of $22,532.50; and (2) for a modest, "lodestar" modifier of 0.5 under California law, in the amount of $11,281.25. (Doc. 109 at 9.) Thus, Hackler Daghighian Martino & Novak, P.C. requests a total of $33,843.75. (*Id.*) Defendant acknowledges that "Plaintiff is entitled to recover attorneys' fees, costs, and expenses," but argues that the Song-Beverly Act "does not authorize a blank check," and the amount requested is unreasonable. (Doc. 110 at 6.)

## A.    Fee Request

Plaintiff seeks lodestars in the amount of $38,995.00 for the work completed by Knight Law Group and $22,532.50 for work completed by Hackler Daghighian Martino & Novak, P.C., which was associated into the case as lead trial counsel. (Doc. 108-1 at 8; Doc. 109 at 9.)

### 1.    Hours worked by counsel

A fee applicant must provide time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Under California law, a court "must carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable. *Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (quoting *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977)). Thus, evidence provided by the fee applicant "should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008). The court must exclude "duplicative or excessive" time from its fee award. *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 161 (2006); *see also Ketchum*, 24 Cal.4th at 1132 ("inefficient or

duplicative efforts [are] not subject to compensation").

Defendant objects to the hours reported, asserting that "Plaintiff failed to offer any explanation based on admissible evidence for why it took two firms who claim to be experts in their field to handle this routine case." (Doc. 110 at 7.) Defendant contends that there was inherent duplication of effort in the Plaintiff's litigation management style. (Doc. 110 at 7.) According to Defendant, much of Knight Law Group's collective knowledge was wasted when it handed the case off to Hackler Daghighian Martino & Novak, P.C. for trial purposes. (Doc. 110 at 7-8.) Further, Defendant objects to numerous "billing entries that reflect excessive rates and/or time." (Doc. 110 at 8.)

### a. Work completed by Knight Law Group

The billing records submitted by Knight Law Group indicate the attorneys expended 108.2 hours on this action, through the preparation of the motion for fees and costs. (Doc. 108-2 at 20-26.) Defendant objects to the hours reported by Knight Law Group and contends there are numerous "billing entries that reflect excessive rates and/or time." (Doc. 110 at 8.)

### i. *Work related to the motion to remand*

According to Defendant, Plaintiff should not recover fees related to the motion to remand, which challenged this Court's diversity jurisdiction on the grounds that the parties were not diverse and the amount in controversy requirement of $75,000.00 was not satisfied.  The Court rejected both arguments and denied the motion on August 30, 2017.  (Doc. 17.)  Defendant argues that "[b]ecause the work on this motion was largely duplicative of previous efforts . . . and denied for the same reasons, it is unreasonable to pass these fees onto Defendant." (Doc. 110 at 8.)

In reply, Plaintiff asserts that "[t]he mere fact that a party does not prevail on a motion does not make that effort unreasonable." (Doc. 113 at 10.)  Plaintiff argues that "Plaintiff brought the motion in good faith in the regular course of this litigation, and FCA does not offer any basis why such costs would not be recoverable under the Song-Beverly Act." (*Id.*)

Notably, however, Plaintiff fails to address the reasonableness of the time expended by each of the attorneys related to the motion for remand.  Plaintiff's counsel reports Alastair Hamblin spent 3.7 hours to draft the motion to remand and related documents, and prepare for and attend the hearing on the motion to remand, and "[d]raft results" on the hearing for multiple cases. (Doc. 108-2 at 21-22.)

Kristina Stephenson-Cheang also indicates that she spent 0.1 hour for her review of the Court's notice of time change regarding the motion to remand. (Doc. 108-2 at 22.) Finally, Mr. Mikhov billed 0.2 hours to review the results of the motion to remand. (*Id.*)

Significantly, as the billing records acknowledge, Plaintiff's counsel filed motions to remand in "multiple cases" before this Court. (*See* Doc. 108-2 at 22.) Similar arguments were presented to the Court in each motion challenging diversity jurisdiction.[1] The Court is unable to find the time related to drafting the motion, attending the hearing, or reviewing the opposition—particularly where no reply was filed—was reasonably expended by counsel. In addition, it appears the time reported by counsel was excessive. Because Plaintiff fails to establish the time was reasonably expended in this action, the lodestar calculation below will be reduced by 2.2 hours for Mr. Hamblin. (*See* Doc. 108-2 at 21-22.)

### ii. Internal communications and review

As noted above, a fee applicant "should make a good-faith effort to exclude from a fee request hours that are … redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The Ninth Circuit has "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). However, in general, counsel should not bill for internal communications and communicating with each other, as such time is unnecessary. *See, e.g., In re Mullins*, 84 F.3d 459, 467 (D.C. Cir. 1996); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010).

This Court previously observed, "many courts have . . . reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013) (citing, *e.g., Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1194 (S.D. Cal. 2003) [reducing selected time entries because attorneys "billed an inordinate amount of time for interoffice conferences"]; *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D. Cal. Jan. 4, 2007) ["communication between attorneys may indicate unreasonable

---

[1] For example, the Court notes that a similar motion was filed by counsel two months before in the Celestine case (*Celestine v. FCA*, case number 2:17-cv-00597-JLT) and it was denied for the same reasons as here. It is simply not possible—or reasonable— that the motion in this case could have necessitated the time reported given the significantly duplicative arguments presented by counsel in the FCA cases before this Court.

overstaffing such that a reduction in hours is appropriate"]).  Notably, the Court's review of the billing records from Knight Law Group reveals a significant amount of time spent on the preparation of internal memorandums and summaries for co-counsel.

For example, Alistair Hamblin attended the hearing on the motion to remand and then drafted the "results" of the hearing on August 1, 2017—prior to the Court issuing its written ruling on August 30, 2017—and his summary of the "results" was then reviewed by Steve Mikhov. (Doc. 108-2 at 22; Doc. 17.) Mr. Mikhov also billed for reviewing the "results" summarized and prepared by other attorneys at Knight Law Group following and initial scheduling conference, the pretrial conference hearing, and the motion in limine hearing.  (Doc. 108-2 at 21, 25-26.)  Likewise attorneys prepared, and reviewed, memorandums and summaries regarding the depositions of Plaintiff, Thomas Lepper, Barbara Luna, and Stan Gozzi. (*See* Doc. 108-2 at 23-26.) Notably, summaries of the deposition frequently followed memorandums prepared by others.  For example, after attending Plaintiff's deposition, Diane Hernandez prepared a memorandum regarding the deposition on March 6, 2018, and the memorandum was subsequently reviewed by Ms. Stephenson-Cheang, who then reviewed the transcript and drafted her own summary on March 21, 2018. (Doc. 108-2 at 23-24.)

Because the preparation and review of these documents were clearly internal communications and duplicative in nature, the Court will reduce the lodestar by a total of 2.5 hours. *See Gauchat-Hargis*, 2013 WL 4828594 at *3; *In re Durosette*, 2012 WL 9123382 at *3 (E.D. Cal. Aug. 23, 2012) (finding a reduction of time appropriate in part due to the amount of time reported for "preparing memos to the lead partner on the case"). This amount includes deductions of 0.6 hour for Mr. Mikhov and 1.9 hours by Ms. Stephenson-Cheang.

### iii.    Clerical tasks

The Supreme Court determined that "purely clerical or secretarial tasks should not be billed at a paralegal or [lawyer's] rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).  As a result, courts have eliminated clerical tasks from fee awards.  *See, e.g., Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997) (approving the court's elimination of hours spent on secretarial tasks from the lodestar calculation).

Mr. Mikhov indicates that he spent 0.6 hour on November 19, 2019 to "[r]eview and audit billing" prior to the filing of this motion. (Doc. 108-2 at 26.) Due to the clerical nature of the task, the Court will reduce 0.6 hour from the fee award for Mr. Mikhov.

#### iv.   Travel

Defendant objects to the time reported by Diane Hernandez, noting that she billed 10.5 hours for attending Plaintiff's deposition, which were brief and "lasted a total of one hour and nine minutes." (Doc. 110 at 9.) In addition, Defendant objects to the 9.5 hours reported for Ms. Hernandez related to the vehicle inspection. (*Id.*) Ms. Hernandez indicated her reported time had "travel included" for both the deposition and vehicle inspection. (Doc. 108-2 at 23.)

Courts have frequently reduced travel time by half to create a reasonable rate. *See, e.g.*, *In re Washington Public Power Supply Sys. Sec. Lit.*, 19 F.3d 1291, 1298-99 (9th Cir. 1994) (finding the district court did not err in reducing attorney travel time by half where the "attorneys generally billed the entire duration of the time spent in transit"); *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993) (affirming a reduction by half of the hourly rate for time billed for travel); *S. Yuba River Citizens League & Friends of the River v. Nat'l Marine Fisheries*, 2012 WL 1038131, at *5 (E.D. Cal. Mar. 27, 2012) (finding the attorney travel time was "subject to a 50% reduction"); *Wishtoyo Found. v. United Water Conservation Dist.*, 2019 U.S. Dist. LEXIS 39927 (C.D. Cal. Mar. 5, 2019). Accordingly, the Court finds the travel time for Ms. Hernandez is subject to a fifty-percent reduction.

Importantly, the billing records from counsel do not clearly identify the time expended by Ms. Hernandez for travel due to the block-billing format of her entries, which include time for preparation, travel to and from the depositions and vehicle inspection, and drafting summaries. (*See* Doc. 108-2 at 23.) Defendant estimates that Ms. Hernandez spent 7.5 hours on travel for the deposition and 6.7 hours on travel for the vehicle inspection. (Doc. 110 at 9-10.)

On the other hand, in the Bill of Costs, Ms. Hernandez indicated that she drove 294 miles for the depositions of Plaintiffs and 262 miles for the vehicle inspection. (Doc. 107 at 3-4.) In addition, the evidence submitted related to the mileage indicates the travel time to the depositions was estimated to be 7.5 hours. (Doc. 107 at 16.) The travel time to the vehicle inspection site was estimated to be 7 hours. (Doc. 107 at 66.) Thus, the Court finds it is reasonable to conclude that the billing from Ms.

Hernandez includes, at a minimum, 14.5 hours of travel. Because this amount is subject to a fifty-percent reduction, the lodestar calculation below reflects a deduction of 7.25 hours for Ms. Hernandez.

*v.*      *Unsupported and "anticipated" time*

Significantly, Plaintiff failed to provide any evidence related to the time spent reviewing the opposition and drafting the reply brief, despite the numerous other exhibits attached to the declarations of Mr. Mikhov in reply. (*See* Doc. 113-1.) In addition, the motion was taken under submission without oral arguments on January 7, 2020. The Court declines to speculate as to the actual time spent by counsel in preparing the reply brief, as it is the fee applicant's burden to present evidence to support a motion. *See Hensley*, 461 U.S. at 424; *Welch*, 480 F.3d at 945-46. Accordingly, the lodestar calculation below reflects a reduction of 11.8 hours for Mr. Berns.

*vi.*      *Excessive time and block billing*

The Court has conducted an extensive review of the billing records in this action, due to Plaintiffs' burden to demonstrate the reasonableness of the hours reported. *See Hensley*, 461 U.S. at 424 (1983); *see also Ketchum*, 24 Cal.4th at 1132 (explaining the court has a burden to "carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable). In doing so, the Court observed there are many instances in which the time billed appears excessive for the tasks completed, even where counsel reported the minimum 0.1 hour.

Further, there are many entries in which attorneys from Knight Law used a block billing format, where the reported time "bundles tasks in a block of time." *See Aranda v. Astrue*, 2011 U.S. Dist. LEXIS 63667 at *13 (D. Ore. June 8, 2011). As the Ninth Circuit observed, "block billing makes it more difficult to determine how much time was spent on particular activities." *Welch v. Metro. Life Ins.*, 480 F.3d 942, 948 (9th Cir. 2007). This is particularly demonstrated here, where counsel included preparation, and attendance at various conferences and depositions in one entry. For example, Alastair Hamblin billed 1.4 hours on May 17, 2017, for his time to "[p]repare for and attend [the] Initial Scheduling Conference (telephonically)" and "[d]raft [r]esults." (Doc. 108-2 at 21.) However, what preparation was required is unclear, as he previously billed for preparing the Rule 26 Joint Report. (*See id.*) In addition, the Court's records indicate the Scheduling Conference began at 8:32 a.m. and ended at 9:02 a.m., during which time the Court discussed not only this action, but also addressed five related

matters with the same counsel.  Thus, only five minutes of the Scheduling Conference should be attributed to the action now pending before the Court, and it appears the billed time is excessive. However, due to the block billing format, it is unclear how much time Mr. Hamblin is billing for his appearance.

Where, as here, attorneys presented time expended in blocks, the Court may "simply reduce[] the fee to a reasonable amount." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000); *see also Welch*, 480 F.3d at 948 ("We do not quarrel with the district court's authority to reduce hours that are billed in block format").  Specifically, the Ninth Circuit determined a district court may "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion" for block billing. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Given the evidence that reported time entries were excessive and the block billing format used by counsel at Knight Law, the Court exercises its discretion to reduce the lodestar calculations below by 10 percent for each of the attorneys at Knight Law Group. The Court finds the remaining hours are reasonable in light of the tasks completed by Knight Law Group in this action.

### b.      Work completed by Hackler Daghighian Martino & Novak, P.C.

As noted above, Knight Law Group associated Hackler Daghighian Martino & Novak, P.C. ("HDMN") into the action as lead trial counsel. (Doc. 109 at 9.) Defendant objects to the hours billed by HDMN as unreasonable, asserting the firm included duplicative entries, "anticipated" costs, and overbilled with quarter-hour increments. (Doc. 110 at 12-13.)

#### i.      Clerical tasks

Review of the time sheets from HDMN reveals tasks that were purely clerical and should be excluded from the lodestar calculation.  *See Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10 (1989). Specifically, Andrea Plata, a paralegal, recorded 2.0 hours for tasks including printing and saving documents, reviewing pleadings, discovery and parties' documents production to prepare case files, and calendaring deadlines. (*See* Doc. 109-1 at 12.)

As noted above, courts have discounted billing entries for "clerical tasks," which includes "filing, transcript, and document organization time."  *Nadarajah*, 569 F.3d at 921; *Harris*, 132 F.3d at 985; *Jones v. Metro. Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for

"filing or retrieving electronic court documents or copying"); *L.H. v. Schwarzenegger,* 645 F. Supp. 2d 888, 899 (E.D. Cal. 2009) (finding organizing and updating files appeared clerical, and declining to award fees where the applicant "tendered no evidence that these are tasks that required the skill of a paralegal"). Thus, 2.0 hours expended by Ms. Plata on the clerical tasks will be deducted from the lodestar.

### ii.     Travel

Defendant objects to the time reported by Kevin Jacobson for time spent attending the pretrial conference. (Doc. 110 at 12.) In the billing records, Mr. Jacobson billed 5.0 hours for travel and to attend the pretrial conference held on April 22, 2019. (Doc. 109-1 at 14.) As Defendant indicates, Plaintiff did not specify the travel time, as the entry is block-billed. (Doc. 110 at 12.) Thus, it appears the travel time for Mr. Jacobson totaled approximately 4.5 hours.

As discussed above, courts have frequently reduced travel time by half to create a reasonable rate. *See, In re Washington Public Power Supply Sys. Sec. Lit.*, 19 F.3d at 1298-99; *Watkins*, 7 F.3d at 459. Accordingly, the Court finds the travel time for Mr. Jacobson is subject to a fifty-percent reduction, and the lodestar calculation below reflects a deduction of 2.25 hours.

### iii.     Quarter-hour billing

HDMN billed in quarter-hour increments, which Defendant argues warrants a deduction in the fee award because "not every task takes 15 minutes to complete" and "Plaintiffs offer no evidence whatsoever that such billing practices are accepted in the industry as standard." (Doc. 110 at 13.)

As Defendant argues, courts have repeatedly criticized quarter-hour billing because it inflates time spent on the matter. *See, e.g., v. Metro Life Ins. Co.,* 480 F.3d 942, 949 (9th Cir. 2007) (affirming a reduction after finding the billing practice inflated the time recorded); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1100-01 (D. Haw. 2010) (applying a 20% reduction for billing in quarter-hour increments); *Prudential Ins. Co. v. Am. v. Remington*, 2014 WL 294989 at *4 (E.D. Cal. Jan. 24, 2014) (also applying a 20% reduction where counsel billed in 15 minute-increments); *Ekstrom v. Marquesa at Monarch Beach Homeowners Assoc.*, 2008 WL 4768861 (Cal. App. 4th. Nov. 3, 2008) (finding the trial court did not err in decreasing the fees requested by 40% where the attorneys billed in quarter-hour increments).

In *Welch*, the district court "imposed a 20 percent across-the-board reduction on [the] requested hours" because the law firm "billed in quarter-hour increments." *Id.*, 480 F.3d at 948. The district concluded the "practice of billing by the quarter-hour resulted in a request for excessive hours . . . because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Id.* The Ninth Circuit also reviewed the time sheets and noted: "Our own review of the time sheet confirms that it is replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intraoffice conferences." *Id.* Therefore, the Court affirmed the reduction for quarter-hour billing. *Id.*

HDMN billed for quarter-hour increments, but the Court's review of the time records does not reveal significant evidence that the billing records were inflated by the billing practice. On the other hand, there are entries for 0.25 and 0.5 hour intraoffice conferences and email correspondence, which were criticized by the Ninth Circuit in *Welch* as evidence the quarter-hour billing practice inflates time. Further, several entries from counsel are in a block-billed format, which makes it difficult for the Court to determine the reasonableness of the time expended on the tasks identified. As a result, the Court will impose a 10 percent deduction for the remaining time reported by the attorneys HDMN. *See Moreno*, 534 F.3d at 1112; *Welch,* 480 F.3d at 948. The Court finds this time reasonable for the tasks undertaken by each of the HDMN attorneys and the paralegal assigned to the action.

### 2. Hourly rates

The Supreme Court determined attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1096 (2000) ("[t]he reasonable hourly rate is that prevailing in the community for similar work"). The fee applicant has the burden to establish the rates are reasonable with the community, and meets this burden by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11.

In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th

Cir. 2008). Thus, when a case is filed in this Court, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011); *see also Gordillo v. Ford Motor Co.*, 2014 WL 2801243 (E.D. Cal. June 19, 2014) (in a diversity action awarding fees under the Song-Beverly Act, the court looked to hourly rates in the Fresno Division, and adjusted the lodestar accordingly).

However, this action was initiated by Defendant's removal to the Sacramento Division, and was transferred to the Fresno Division. When an action is properly initiated in one district and is transferred to a different forum, counsel should be compensated at the prevailing rate of the initial forum. *See Polk v. NY State Dep't of Corr. Services,* 722 F.2d 23, 25 (2d Cir. 1983). Thus, the Court finds the relevant community for the purpose of determining the local hourly rate is the Sacramento Division. However, as discussed below, the Sacramento Division and Fresno Division award comparable rates. *See Fitzgerald v. Law Office of Curtis O. Barnes*, 2013 WL 1627740, n.5 (E.D. Cal. Apr. 15, 2013) (observing that "[c]ases from this Court's Sacramento Division largely mirror the rate determinations from the Fresno Division").

The court may apply "rates from outside the forum… 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)). Plaintiff presents no evidence that local counsel was either unwilling or unable to prosecute her claims in this action. Thus, the Court must determine whether the hourly rates requested by counsel are reasonable for the Sacramento Division of the Eastern District. *See, e.g., Gordillo*, 2014 WL 2801243 at \*5-6; *AT&T Mobility LLC v. Yeager*, 2018 WL 1567819 at \*4-5 (E.D. Cal. Mar. 30, 2018).

a.    Rates for non-attorney staff

Plaintiff's counsel calculated the lodestar using an hourly rate of $75 for Andrea Plata, a paralegal. (Doc. 109-1 at 4, Daghighian Decl. ¶ 7.) According to Mr. Daghighian, Ms. Plata has been a paralegal at HDMN "for over two years and is well-versed in litigation support." (*Id.*)

Generally, paralegal rates within the Fresno Division of the Eastern District range between $75 to approximately $150.00. *See Silvester v. Harris*, 2014 WL 7239371 at \*4 (E.D. Cal. Dec. 17, 2014)

("[t]he current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience"); *Trujillo v. Singh*, 2017 WL 1831941 at *3 (E.D. Cal. May 8, 2017) (finding requested hourly rates of $95-115 were reasonable in the Fresno Division). Based upon the information provided by counsel and this Court's prior review of hourly rates for paralegals in the Fresno Division, the Court finds the hourly rate for Ms. Plata is appropriate and no adjustment will be made to the requested rate of $75 per hour.

<u>b.     Rates for counsel</u>

The attorneys at Knight Law Group seek hourly rates ranging from $275 to $550, and attorneys at HDMN seek hourly rates ranging from $225 to $550. (Doc. 108-2 at 6-10, Doc. 109-1 at 2-4.) In support of counsel's lodestar calculation and the fee request based upon these hourly rates, Plaintiff requests the Court review:

> (i) the hourly rates set forth in the declaration filed concurrently herewith (SM Dec., ¶¶ 23-33), (ii) a survey of rates charged by other well-known consumer law attorneys (SM Dec., ¶ 36), (iii) over one dozen court orders confirming the reasonableness of Plaintiff's counsels' hourly rates and time billed in other Song-Beverly Act cases in Northern California (SM Dec., ¶¶ 37-52, Exs. E-T), and (iv) a National Survey further supporting the reasonableness of the hourly rates. (SM Dec., ¶ 53, Ex. U, at pp. 42-45.)

(Doc. 108-1 at 15.) Additionally, in Plaintiff's request for HDMN's attorney's fees, Plaintiff requests the Court review:

> (i) the hourly rates set forth of in the declarations filed concurrently herewith (SD Dec., ¶¶ 3-7), (ii) multiple court orders confirming the reasonableness of HDMN's attorney's hourly rates and time billed in other Song-Beverly Act cases (SD Dec., ¶¶ 21-25, Exs. D-H), and (iii) a National Survey further supporting the reasonableness of the hourly rates. (SD Dec., ¶ 9, Ex. B, at pp. 42-45.)

(Doc. 109 at 13.) However, much of this evidence does not address the local forum or assist the Court in its analysis.  For example, while Mr. Mikhov identifies "the hourly rates of other attorneys in California who work in the area of lemon law and consumer law," he does not identify attorneys practicing in the Eastern District. (*See* Doc. 108-2 at 10-11, Mikhov Decl. ¶ 36.)

Further, though Mr. Mikhov identifies cases in which the attorneys were awarded fees from state courts within the Eastern District boundaries—including Sacramento County, San Francisco County, Colusa County—many of the courts' orders adopted the proposed orders and offered no

analysis regarding whether the hourly rates were reasonable for local counsel.  (*See, e.g.* Doc. 108-2 at 111-112, 152-153, 164-165, 178-179.)  Without such analysis, the Court is unable to determine whether the plaintiffs presented evidence that local counsel was either unwilling to take their case or unable to do so, such that the higher hourly rate was warranted.  Given the lack of such evidence here, the hourly rates will be reduced for purposes of calculating the lodestar.  *See Gordillo*, 2014 WL 2801243 at *5-6; *Barjon v. Dalton,* 132 F.3d 496, 500-02 (9th Cir. 1997) (affirming the court's decision to decline an award of out-of-district billing rates where the fee applicant failed "to prove the unavailability of local counsel," and reduced the award to the hourly rates in the relevant community). Indeed, the requested hourly rates were from Knight Law Group were rejected in *Barrera vs. FCA US LLC* (San Francisco County Superior Court Case No. 16-551433), which is attached as Exhibit M to the motion; and Mr. Mikhov acknowledges the "overall award represents 84% of the amount requested." (Doc. 108-2 at 152-153; Doc. 108-2 at 14, Mikhov Decl. ¶ 45.)

Notably, whether the Court applies hourly rates for the Sacramento Division or the Fresno Division, the requested rates exceed those generally found reasonable in the Eastern District.  *See Fitzgerald*, 2013 WL 1627740, n.5.  The Sacramento Division has awarded hourly rates ranging from $150 for new and inexperienced lawyers to $450 per hour to the most experienced.[2]  *See, e.g.*, *Ontiveros v. Zamora*, 303 F.R.D. 356, 373-374 (E.D. Cal. 2014) ("[a] reasonable rate for associates working in this community is typically between $150 and $175 per hour," and awarding $400 for partners and $175 to associates); *AT&T Mobility LLC v. Yeager*, 2018 WL 1567819 at *4-5 (E.D. Cal. Mar. 30, 2018) (observing that "[i]n the Sacramento division, the average rate for junior associates is between $150 and $175," and the requested rate of $600 by an attorney who had experience exceeding twenty years was "unreasonably high for this forum," and reducing the award to $300 per hour due to the simplicity of the work required); *Eagle Sys. & Servs. v. Int'l Assoc. of Machinists*, 2017 WL

---

[2] As noted, these hourly rates are comparable to those awarded in the Fresno Division.  This Court previously reviewed the billing rates for the Fresno Division of the Eastern District and determined that for attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour." *Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 2014). In addition, "hourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Id.*; *see also Roach v. Tate Publ'g & Enter.*, 2017 WL 5070264 at *9 (E.D. Cal. Nov. 3, 2017) ("attorneys with experience of twenty or more years of experience are awarded $350 to 400 per hour").

1213373 at *3 (E.D. Cal. Mar. 31, 2017) ("judges in this district accept rates between $400 and $450 for partners with 20 to 35 years of experience") (collecting cases). With these parameters in mind, the hourly rates for counsel must be adjusted to calculate the lodestar.

The Court notes that Diane Hernandez, who seeks the hourly rate of $375, "was admitted to practice in California in 1997." (Doc. 108-2 at 9, Mikhov Decl. ¶ 30.) In addition, Mr. Mikhov reports that Ms. Hernandez "frequently works. . . in lemon law cases." (*Id.*) Because the hourly rate identified for Ms. Hernandez is within the reasonable range for the Sacramento Division based upon her significant experience, the Court finds the requested hourly rate is appropriate. *See Ontiveros*, 303 F.R.D. at 373-374.

The hourly rate for Mr. Mikhov and Russell Higgins, who were admitted to the bar in 2003, will be reduced to $300. *See Estrada v. iYogi, Inc.,* 2016 WL 310279, at *6 (E.D. Cal. Jan. 26, 2016) (approving $400 requested rate for partners with as much as 19 years of experience); *see also Gordillo*, 2014 WL 2801243 (awarding an hourly rate of $300 to an attorney who had "represented thousands of California consumers with Song–Beverly claims in the last fourteen years"). The hourly rate for Sepehr Daghighian, who began practicing law in late 2005, and Mark Berns, who began practicing law in 2006, is adjusted to $275. The hourly rate for Kristina Stephenson-Cheang, who began practicing law in 2008, will be adjusted to $250. Further, the rates for Larry Castruita, Alastair Hamblin[3], Amy Morse, and Mitchell Rosensweig—who began practicing law between 2011 and 2013—will be adjusted to $225. Finally, the hourly rates for attorneys who have practiced law for less than five years—including Deepak Devabose, Kevin Jacobson, James Martinez, Erik Schmitt, and Christopher Urner— are adjusted to $175. *See Ontiveros*, 303 F.R.D. 356 at 373-74; *Yeager*, 2018 WL 1567819 at *4-5.

Based upon the Court's survey of the attorney fees in both the Sacramento and Fresno Divisions and the Court's own knowledge, these hourly rates are reasonable for the tasks completed by

---

[3] Plaintiff did not provide any specific information regarding when Alastair Hamblin began practicing law, but rather only reported that he "graduated from Southwestern Law School in 2007" and began working at Knight Law Group in 2016. (Doc. 108-2 at 8, Mikhov Decl. ¶ 26.) However the Court "may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar." *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 1298 n. 5 (2014). Thus, the Court takes judicial notice of the admission date of Alastair Hamblin as February 2012, as represented on the website of the State Bar of California. *See id.*; Fed. R. Evid. 201(b).

counsel in this action.  *See id.*; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).

### 3. Lodestar calculation

The lodestar method calculates attorney fees "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida* , 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433); *see also Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016).  With the time and rate adjustments set forth above, the lodestar in this action is **$29,963.26**:

| LAW FIRM | LEGAL PROFESSSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **Knight Law Group ($18,921.38)** | Alastair Hamblin | 4.5 | $225 | $1,012.50 |
| | Amy Morse | 13.14 | $225 | $2,956.50 |
| | Christopher Urner | 7.2 | $175 | $1,260.00 |
| | Deepak Devabose | 9.36 | $175 | $1,638.00 |
| | Diane Hernandez | 11.475 | $375 | $4,303.13 |
| | James Martinez | 2.25 | $175 | $393.75 |
| | Kristina Stephenson-Cheang | 12.87 | $250 | $3,217.50 |
| | Mitchell Rosensweig | 2.25 | $225 | $506.25 |
| | Mark Berns | 3.69 | $275 | $1,014.75 |
| | Russell Higgins | 4.95 | $300 | $1,485.00 |
| | Steve Mikhov | 3.78 | $300 | $1,134.00 |
| | | | | |
| **Hackler, Daghighian, Martino & Novak ($11,041.88)** | Erik Schmitt | 6.075 | $175 | $1,063.13 |
| | Kevin Jacobson | 27.45 | $175 | $4,803.75 |
| | Larry Castruita | 15.3 | $225 | $3,442.50 |
| | Sepehr Daghighian | 6.3 | $275 | $1,732.50 |
| | Andrea Plata | 0.0 | $75 | $0.00 |
| | | | | |
| **TOTAL** | | | | **$29,963.26** |

### 4. Application of a multiplier

Once a court has calculated the lodestar, "it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte,* 1 Cal.5th at 504 (citation omitted); *see also Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (indicating the court may adjust the fee award considering "the following factors: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the

contingent nature of the fee award").

Significantly, however, this case did not present novel or difficult questions of law or fact. Indeed, the issues related to the TIPM were addressed in *Velasco, et al. v. Chrysler Group LLC*, Case No. 2:13-cv-08080-DDP-VBK. In addition, the issues presented in this action were not complex. *See Steel v. GMC*, 912 F. Supp. 724, 746 (N.J. Dist. 1995) ("the issues in lemon law litigation are not complex and do not require a significant amount of legal analysis or novel pleading"). As Defendant observes, the facts were not significantly disputed and little discovery was required. It does not appear that significant skill was needed to pursue Plaintiff's claims. Furthermore, there is no evidence that "the nature of the litigation precluded other employment by the attorneys." To the contrary, Plaintiff's counsel—15 attorneys in total—expended less than 135 hours of compensable work on this action over the course of three years. Finally, the Court finds the contingent nature of the fee award is outweighed by the other factors, particularly in this action where the disputed facts and issues to be resolved were minimal. Accordingly, the Court finds the lodestar amount of **$29,963.26** is reasonable and declines to award a multiplier.

## B. Costs to be Awarded

Plaintiff seeks costs in the amount of $20,248.96. (Doc. 107; Doc. 108-2 at 29-32.) According to Plaintiff, "[u]nder the Song-Beverly Act, a prevailing buyer shall be allowed to recover as part of the judgment a sum equal to the aggregate amount of costs <u>and expenses</u>.) (Doc. 108-1 at 22, emphasis in original.) Thus, Plaintiffs suggest that the Court should award costs and expenses under California law rather than federal law.

Significantly, the Ninth Circuit determined an award of costs in the district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law, even in diversity cases.[4] *See*

---

[4] An exception to this rule exists if "a state law provision allows for the awarding of costs as part of a substantive, compensatory damages scheme." *Self v. FCA US LLC*, 2019 WL 1994459, n. 8. (E.D. Cal. May 6, 2019) (citing *Kelly v. Echols*, 2005 WL 2105309, at *16 (E.D. Cal. Aug. 30, 2005); *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064-65 (9th Cir. 2003). Thus, where a statute expressly defines "damages" as including "costs," state law governs an award of costs because "the measure of damages is a matter of state substantive law." *Andresen v. Int'l Paper Co.*, 2015 WL 3648972, at *3 (C.D. Cal. June 10, 2015). Because the Song-Beverly Act does not make "costs" an element of damages as in *Clausen*, this Court has declined "to depart from the general rule that federal law governs whether costs should be awarded." *Self*, 2019 WL 1994459, n. 8; *see also Robinson v. Kia Motors Am., Inc.,* 2016 WL 4474505, at *1 (E.D. Cal. Aug. 25, 2016) (applying Rule 54(d) to analyze costs under the Song-Beverly Act).

*Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n. 2 (9th Cir. 1987)). This is because "federal courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Thus, federal procedural law governs Plaintiff's request for an award of costs.

Rule 54 of the Federal Rules of Civil Procedure provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This "creates a presumption in favor of awarding costs to the prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce*, 342 F.3d at 1022. "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). For example, costs may be declined in light of "a losing party's limited financial resources" or where there has been "misconduct by the prevailing party." *Champion Produce*, 342 F.3d at 1022.

The Supreme Court explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc*., 482 U.S. 437, 441 (1987). Costs that may be taxed under 28 U.S.C. § 1920 include:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Generally, the court may not award costs under Rule 54(d) that are not authorized by statute or court rule. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006). Thus, "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (citing 10 Wright & Miller § 2666, at 203).

///

### 1.  Service

Pursuant to Local Rule 292(f)(2), a party may recover "fees for service by a person other than the Marshal under Fed. R. Civ. P. 4 to the extent they do not exceed the amount allowable for the same service by the Marshal."  Currently, the United States Marshal charges $8 per mailed item and $65 per hour for personal service.  20 C.F.R. § 0.114(a).  Requests for costs that exceed these amounts may be reduced to align with the amount authorized by Section 0.114(a).  *See Yeager v. Bowlin,* 2010 WL 716389 at *2 (E.D. Cal. Feb. 26, 2010).

Plaintiff seeks costs for service of the summons to FCA in the amount of $37.95. (Doc. 107 at 3.) This fee is within the amount authorized under Section 0.114(a) and will be allowed.  However, Plaintiffs also seek $78.45 for service upon "Elk Groove"[5] and service of a deposition subpoena upon Elk Grove's person most knowledgeable in the amount of $94.95. (*Id.*) According to Plaintiffs' invoices, the higher service charges included fees due to copying. (Doc. 107 at 9.) Plaintiff offers no explanation as to why the fees for service upon Elk Grove exceeded those of service upon FCA, and there is no evidence regarding the amount of time required for this service.  Thus, the Court reduces each of these service fees to the $65.00 contemplated by statute, for a total deduction of $43.40.

### 2.  Filing service

Plaintiff seeks $124.86 in costs for use of a service that filed their documents. (Doc. 107 at 52-54.) However, courier and messenger services "fall outside of the[] parameters" of Section 1920. *Bonilla v. KDH Backhoe Serv*., 2007 WL 39307 at *3 (N.D. Cal. Jan. 4, 2007).  Accordingly, Plaintiff's request for these costs is denied, and the cost award will be reduced by $124.86.

### 3.  Mileage

The itemization of costs indicates that Plaintiff seeks costs for travel by counsel, including mileage to and from several depositions and Lyft and Uber rides. (Doc. 107 at 3-4.) In total, Plaintiff seeks $322.48 in mileage for Diane Hernandez, $4.15 for James Martinez, and $127.60 for Kevin Jacobson. (*Id.*) Plaintiff also seeks $19.38 for a Lyft ride for Christopher Urner and $31.24 for an Uber ride for Russell Higgins. (Doc. 107 at 4.)

---

[5] Presumably, this refers to defendant, "Elk Grove Auto Group, Inc."

Pursuant to Local Rule 292(f)(8), mileage for *witnesses*, not attorneys, may be taxed as costs. Likewise, other courts have determined attorneys are not entitled to mileage under Section 1920. *See, e.g.*, *Syngenta Seeds, Inc. v. Delta Cotton Co-op, Inc.,* 2007 WL 1106116 at *2 (E.D. Ark. Apr. 12, 2007) (declining "to award travel and mileage costs for his attorney as such costs are not found in § 1920"); *Horina v. City of Granite City*, 2007 WL 489212 at *2 (S.D. Ill. Feb. 9, 2007) ("mileage expenses of attorneys are not recoverable costs under 28 U.S.C. § 1920"). As a result, Plaintiffs are not entitled to mileage for their attorneys to travel to the depositions. *See Atain Specialty Ins. Co. v. Sierra Pacific Mgmt. Co.,* 2016 WL 7034887 at *2 (E.D. Cal. Dec. 2, 2016) (finding the plaintiffs were "not entitled to the … mileage fee for their attorney's travel"). Therefore, Plaintiff's request for costs will be reduced by $504.85.

### 4. Deposition transcripts

Section 1920(2) provides that "fees for printed or electronically recorded transcripts necessarily obtained for use in the case" may be taxed as costs. Similarly, Local Rule 292(f)(3) provides that items taxable as costs include "Court reporter fees." Thus, if found to be necessary to the litigation of a case, the costs of transcripts of depositions taken in a case may be taxed as costs under Rule 54 and Section 1920. *See Aflex Corp. v. Underwriters Laboratories*, 914 F.2d 175, 176-78 (9th Cir. 1990) (finding the "taxing of costs for copies of depositions" was proper).

On the other hand, costs incurred related to deposition transcripts that are "merely for the convenience of counsel" are not permitted under Section 1920. *Oyarzo v. Tuolumne Fire Dist.*, 2014 WL 1757217 at *7 (E.D. Cal. Apr. 30, 2014). As a result, costs for expediting transcripts, condensing the transcripts, and litigation support packages are not permitted. *See Daniel v. Ford Motor Co.,* 2018 WL 1960653 at *4 (E.D. Cal. Apr. 26, 2018) ("the court will not allow costs for rough drafts, expedited fees, CD litigation packages, … 'e-transcripts,' 'digital transcripts,' or 'condensed transcripts,' which appear to have been provided for the convenience of the attorneys"); *see also Hesterberg v. United States,* 75 F.Supp.3d 1220, 1225 (N.D. Cal. 2014) (noting it was "well established" in the district that "expedited delivery charges for deposition transcripts are not allowable").

Plaintiff has not made any showing that the copies for Ms. Hernandez, litigation support

package, condensed transcript, exhibit linking and scanning, eDisks, flash drive, and associated handling fees were necessary. Rather, it appears these were for the convenience of counsel, and recovery is not permitted under Section 1920. *See Oyarzo*, 2014 WL 1757217 at *7; *Daniel,* 2018 WL 1960653 at *4. Accordingly, the Court will deduct $752.65 from the requested cost award. (*See* Doc. 107 at 3, 15, 22-23.)

### 5. Miscellaneous deposition costs

The requested costs related to depositions also include parking in the amount of $3.33 for James Martinez, toll for Diane Hernandez in the amount of $5.00, and a meal in the amount of $24.97 for Russell Higgins. (Doc. 107 at 3.) Such costs are not permitted under Section 1920. *See Self v. FCA US LLC*, 2019 WL 1994459 at*15 (E.D. Cal. May 6, 2019) (finding costs for "conference rooms, airport parking, gasoline, rental cars, meals, and lodging... are not permitted under section 1920"). Accordingly, the Court will deduct $33.30 from the cost award.

### 6. Experts

Plaintiff seeks $12,417.83 related to expert witnesses, including the depositions of Thomas Lepper and Barbara Luna. (Doc. 107 at 3, 35-46.)

Significantly, the Ninth Circuit determined a court must apply federal law to a request for costs in a diversity action. *See Aceves v. Allstate Ins. Co.,* 68 F.3d 1160 (9th Cir. 1995). The Court in *Aceves* awarded the prevailing party costs, including expert witness fees, under section 998(c) of the California Code of Civil Procedure. *Id.*, 68 F.3d at 1167. The Ninth Circuit found the district court erred in applying California law because "reimbursement of witness fees is an issue of trial procedure" and in a diversity action, "federal law controls the procedure by which the district court oversaw the litigation." *Id.*, citing *Hanna v. Plumer*, 380 U.S. 460, 463 (1965). Accordingly, here, the Court must apply federal law to determine whether Plaintiff is entitled to recover expert fees as costs.

Under Section 1920, only compensation for "court appointed experts" and witness fees is permitted. *See* 28 U.S.C. § 1920. Neither of Plaintiff's witnesses were appointed by the Court. As such, Plaintiff is not entitled to recover the expert fees under Section 1920. On the other hand, 28 U.S.C. § 1821 provides that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance," including testimony at a deposition. Thus, a prevailing party may be awarded the witness

fee under Section 1821 for an expert who testifies at a deposition. *See Ruff v. County of Kings*, 700 F.Supp.2d 1245, 1247-48 (E.D. Cal. 2010). Consequently, Plaintiff is entitled to $80 in costs for the depositions of Mr. Lepper and Ms. Luna, which results in a deduction of $12,337.83 from the requested award.

### 7. Overnight courier

Plaintiff seeks $293.76 in costs for service of unidentified documents sent by an overnight courier. (Doc. 107 at 4, 56-64.) However, "[c]ommunication charges like courier [and] mail… costs cannot be taxed" under Section 1920. *Nat'l Union Fire Ins. Co. v. Allied Prop. & Cas. Ins. Co.*, 2014 WL 3529980 at *1 (E.D. Cal. July 16, 2014) (citing *El–Fadl v. Central Bank of Jordan*, 163 F.R.D. 389, 390 (D.D.C.1995); *see also Cooper v. United Air Lines, Inc.,* 2015 WL 3548572 at *3(N.D. Cal. June 5, 2015) ("Overnight delivery and courier charges are not one of the enumerated categories of recoverable costs in § 1920"); *Bonilla v. KDH Backhoe Serv*., 2007 WL 39307 at *3 (N.D. Cal. Jan. 4, 2007) (finding "overnight delivery and messenger services" "fall outside of the[] parameters" of Section 1920). Accordingly, Plaintiff's request for these costs is denied, and the cost award will be reduced by $293.76.

### 8. Other costs

Plaintiff has provided evidence of other costs incurred in this action related to jury fees, exhibit copies, and hearing reporters. (Doc. 107 at 3, 13, 48, 50.) However, such costs are not permitted under Section 1920. Accordingly, the Court will deduct $4,052.61 from the cost award.

### 9. Total costs to be awarded

With the deductions set forth above, Plaintiffs are entitled to $2,105.70 in costs under federal law, as provided under 28 U.S.C. §§ 1821 and 1920.

## V. Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1. Plaintiffs' motion for fees is **GRANTED** in the modified amount of **$29,963.26** ($18,921.38 for the work completed by Knight Law Group and $11,041.88 for work completed by Hackler Daghighian Martino & Novak, P.C.); and

///

2. Plaintiffs' motion for costs is **GRANTED** in the modified amount of **$2,105.70**.

IT IS SO ORDERED.

Dated: __**January 16, 2020**__ _____ **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE